```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

DONNA LYON,                      )
                                 )
                Plaintiff,       )
                                 )
      v.                         )    No.  08 C 7319
                                 )
AMERICAN FAMILY MUTUAL           )
INSURANCE COMPANY,               )
                                 )
                Defendant.       )
```

## MEMORANDUM OPINION AND ORDER

Donna Lyon ("Lyon") was the owner of a dwelling in South Barrington, Illinois when that residence and some of her personal property were damaged or destroyed early in 2008 due to a "severe water loss." At that time Lyon was insured by American Family Mutual Insurance Company ("American Family"). Lyon sued American Family eleven months later--on December 23, 2008--arguing essentially that it had failed to compensate her fully for her losses.

Lyon's insurance policy ("Policy") contained this Appraisal Clause:[1]

> Appraisal: If you [Lyon] and we [American Family] fail to agree on the amount of loss, either may demand an appraisal of the loss. In the event, each party will

---

[1] This Court's review of the Policy has not discovered any choice of law provision (a subject that the parties' counsel ought to have discussed but did not). But because the Appraisal Clause is part of an Illinois Amendatory Homeowners Endorsement (unsurprisingly, given the location of the insured property), Illinois law should presumably supply the rules of decision in this diversity case. As it turns out, however, neither side has adduced any relevant Illinois caselaw.

> choose a competent appraiser within 20 days after
> receiving a written request from the other.  The two
> appraisers will choose an umpire.  If they cannot agree
> upon an umpire within 15 days, you or we may request
> that the choice be made by a judge of a court of record
> in the state where the insured premises is located.
> The appraisers will separately set the amount of loss.
> If the appraisers submit a written report of an
> agreement to us, the amount agreed upon will be the
> amount of loss.  If they fail to agree, they will
> submit their differences to the umpire.  A decision
> agreed to by any two will set the amount of loss.
>
>> a.  Each party will pay its own appraiser and
>> bear the other expenses of the appraisal and
>> umpire equally, except as provided in b. below.
>>
>> b.  We will pay your appraiser's fee and the
>> umpire's fee, if the following conditions exist:
>>
>>> (1) You demand the appraisal; and
>>>
>>> (2) The full amount of loss, as set by your
>>> appraiser, is agreed on by our appraiser or
>>> the umpire.

American Family invoked the Appraisal Clause in a March 3, 2009 letter to Lyon and again on March 27, 2009 with the filing of "Defendant's Motion To Dismiss or Stay the Proceeding and To Compel Appraisal."

This Court has earlier denied American Family's motion to the extent that it sought dismissal due to an asserted lack of subject matter jurisdiction.  This memorandum opinion and order addresses the remaining issues: whether to order appraisal and, relatedly, to stay the proceedings pending the outcome of the appraisal procedure.

Background

On January 22, 2008[2] a "severe water loss" was said to have so damaged Lyon's South Barrington, Illinois home that it became uninhabitable, at the same time damaging and destroying a large amount of Lyon's personal property.  On April 18 Lyon submitted an estimate of $580,823.83 to American Family, her homeowner's insurance carrier, to cover the repair and replacement of her personal property.  On April 25 Lyon's general contractor estimated the cost of restoring the dwelling at $2,763,572.10, and Lyon delivered a copy of that estimate to American Family.

In sharp contrast to Lyon's estimates, American Family estimated the cost to repair the dwelling at $334,242.72.  Soon thereafter, after first subtracting Lyon's deductible and withholding an amount for depreciation, American Family issued Lyon an "actual cash value" payment of $255,398.04 as to the residence (American Family has neither provided an estimate nor made any payment to cover the loss of Lyon's personal property).  On July 17 Lyon wrote American Family claims adjuster Luster Drink ("Drink") that the American Family payment for damage to her dwelling was inadequate and that she had retained legal counsel to assist her in resolving the dispute.

According to Lyon, "[n]o substantive negotiations or

---

[2] From here on out all dates referred to without a year designation were also in 2008.

communications ensued between American Family and Ms. Lyon between July 11, 2008 and December 17, 2008." American Family disputes that there were no substantive communications during that time, though it acknowledges that whatever communications took place were not with Lyon directly but with her counsel, for she had advised that she had retained representation for negotiation purposes. American Family attests that its representatives communicated with Lyon's attorneys on August 18, October 1 and November 11 and that on each of those occasions Lyon's attorneys responded that they were not prepared to discuss the matter thoroughly because they had not completed review of their case file. During the November 11 exchange Lyon's counsel said that although they had not yet spent much time on the file, they would respond to American Family's inquiries by the end of 2008.

Both Lyon and American Family acknowledge that Lyon wrote another letter to Drink on December 17, asking when she could expect payment for her personal property. American Family points out that Lyon sent that letter personally, despite her being represented by counsel. Drink never responded before suit was filed, but American Family explains that it considered negotiations about the amount of loss to be ongoing based on the representations of Lyon's counsel.

Lyon filed her original Complaint here shortly thereafter

4

(on December 23), serving summons on American Family through the Illinois Department of Insurance. Lyon then filed a First Amended Complaint ("FAC") on January 5, 2009 pursuant to this Court's brief order pointing out a deficiency in the original Complaint, and the FAC was served on American Family by the same means as the original Complaint. American Family states that it first learned of the lawsuit through such service on or about February 18, 2009,[3] and it holds out that date as the time it first ascertained that the parties' good faith negotiations had reached impasse.

American Family's counsel Steve Thompson ("Thompson") spoke with Lyon's counsel on March 2, 2009 to request certain documents

---

[3] It is unclear whether (or if so, why) there is a gap between (1) the date on which American Family would have received the initial summons and Complaint under Lyon's version of the facts (remember that even though the late December 2008 physical service on the Illinois Department of Insurance is sufficient to create personal jurisdiction over an insurer such as American Family, the Department's transmittal of that information to the insurer is the relevant event to establish actual notice of the lawsuit--and the record before this Court does not identify just when that took place) and (2) the February 18, 2009 date on which American Family claims it was first on notice of the lawsuit. Notably, although American Family does not say so in its present motion or reply, it said earlier (in a motion to extend the time to file a responsive pleading) that "[t]he exact date of service of the Complaint and summons on American Family is unknown. However, an internal e-mail dated February 18, 2009 from American Family personnel acknowledges receipt of the suit." Even though it would seem odd that such a purely internal notation would be delayed for any reason, that does not necessarily negate the possibility that service of process took place at an earlier date but was memorialized only at the later date. As will be seen, however, the exact date of service is of no real consequence to the ultimate ruling on the current motion.

5

referred to in the FAC.  According to Lyon, Thompson asked if Lyon was interested in appraisal, but Lyon's counsel represented that she was not.  American Family says it sent a letter to Lyon the next day invoking the Policy's Appraisal Clause.[4]  On March 6, 2009 American Family filed a motion for an extension of time to file a responsive pleading to the FAC, and three weeks later it filed the current motion to stay and to compel appraisal.  Lyon contends that the filing of that motion was the first indication that American Family was making an appraisal demand (although at one point in her memorandum Lyon considers the March 3, 2009 letter to have been an appraisal demand as well).[5]

### Appraisal or No Appraisal?

Under the terms of the Policy's Appraisal Clause:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.

Under a plain reading of that provision, confirmed as well by consideration of the Policy as a whole, an appraisal demand is optional--it is not a precondition to filing a lawsuit.  Either party "may" demand appraisal if the parties fail to agree on the

---

[4] Lyon responds that a letter was "purportedly sent" to her insured dwelling, although American Family had been advised that the property was uninhabitable and Lyon no longer lived there. Lyon also states that although the letter reflected the claimed transmittal of a carbon copy to Lyon's counsel, no such copy was received by her counsel.

[5] As with the matter referred to in n.2, the internal discrepancy in Lyon's memorandum has no consequence to the decision here.

loss amount, but nothing in the Policy suggests that a party must demand appraisal. Had American Family wanted to include a mandatory appraisal provision in its Policy form it certainly could have, but it did not. So Lyon was plainly entitled to bring this lawsuit.

While Lyon was thus not required to seek appraisal before filing suit, the Policy terms dictate that once a party demands appraisal--assuming first that the parties cannot agree on the amount of the loss--the appraisal process becomes mandatory.[6] Ultimately then the real question is whether American Family's invocation of the Appraisal Clause was timely when made and entitles it to stay the court proceedings pending the outcome of that process.

Lyon contends that American Family waived[7] its right to demand appraisal. Such waiver occurred, Lyon argues, because American Family failed to make an appraisal demand within any one of three time periods and any of those failures would bar invocation of the Appraisal Clause: (1) within one year after

---

[6] As the Appraisal Clause reads, once either party demands appraisal "each party will choose" an appraiser, the appraiser then "will choose an umpire," and so on with like locutions.

[7] "Forfeited" would of course be a more accurate term--for a discussion of the distinction between the two terms, see, e.g., United States v. Irby, 558 F.3d 651, 655 (7th Cir. 2009). But solely because the parties have crossed swords using the less appropriate "waiver" label, this opinion will employ the same terminology.

7

the loss event, (2) before suit was filed and (3) within a reasonable time. As the ensuing analysis demonstrates, the existence or nonexistence of a waiver must be tested by the third of those standards--whether the appraisal demand occurred within a reasonable time after the parties reached impasse--and not by either of the other two.

As for the first of her contentions, Lyon relies on a single majority opinion in a split decision emanating from an Arizona intermediate appellate court--<u>Meineke v. Twin City Fire Ins. Co.</u>, 892 P.2d 1365 (Ariz. Ct. App. 1995)--to assert the proposition that because the Policy requires the insured to file suit within one year of the loss, appraisal must also be demanded within that same time frame even though the Policy itself includes no such express requirement. Such a lone 2-to-1 opinion from another state--and not the highest court of that state to boot--would not seem to carry much weight to begin with. But even on its own terms the <u>Meineke</u> situation differs meaningfully from that involved here. Indeed, the ground on which Lyon seeks to stake out her claim was just one of a couple of bases--involving factors not present here--that led the <u>Meineke</u> court to affirm the trial court's finding of waiver.

While it is true that in this case more than a year passed between the time of the loss event and the date on which American Family filed its motion seeking to compel appraisal (after having

8

demanded it in an earlier letter), much of the elapsed time was ascribable not to American Family but rather to Lyon's own conduct and that of her counsel. For months American Family attempted to move negotiations forward and engage Lyon and her counsel in productive discussions about the dispute, but Lyon's counsel continually responded that they had not had time to review Lyon's case file adequately. Finally Lyon's counsel promised to respond to American Family's inquiries by the end of 2008. Lyon did respond all right--but she did so by filing suit on December 23, fully eleven months after the loss event.

That filing did not itself put American Family on notice of the lawsuit--its receipt of the Complaint did that. Thus American Family had no way to know that its attempts to negotiate had been rebuffed until a period of about a year (see n.2) had elapsed since the loss event. To allow Lyon's counsel's actions--by failing to move substantive discussions along and then by filing suit at the time they chose to do so--to create a timing problem that could block American Family's resort to the Appraisal Clause would make the <u>Meineke</u> majority's approach highly problematic.

Because the Appraisal Clause preconditions its invocation on the parties' failure to agree on the loss amount (which necessarily presupposes a breakdown in negotiations about that amount), American Family would not have been able to call the

9

clause into play until it knew impasse had been reached--
knowledge that in this case came when it learned that Lyon had
filed this lawsuit.[8]  Even under Lyon's version of the timing,
which is certainly not established at this point (see n.2), this
Court would not require that American Family scramble to invoke
the Appraisal Clause when Lyon's own actions would have forced
such swift decisionmaking.  Indeed, at worst (from Lyon's
perspective) it would appear that American Family responded to
the circumstances in a reasonable fashion and had not waived its
right to demand appraisal.  That's why <u>Meineke</u>'s one-year rule is
far less persuasive than the "reasonable time" standard that has
been adopted more widely by other courts.

     As for Lyon's second proposed standard, this Court is also
unpersuaded by Lyon's reliance on the split decision in <u>Hayes v.
Allstate Ins. Co.</u>, 722 F.2d 1332, 1335-36 (7th Cir. 1983) for the
proposition that where an insurance policy permits an appraisal

---

[8] Lyon argues that American Family knew of the <u>dispute</u> much earlier than the date when it was served with the Complaint, but that is not relevant.  Under the Appraisal Clause the relevant event is not the existence of a difference of views as to the loss amount, but rather the parties' inability to resolve that difference despite their attempts to do so.  American Family continued to make efforts to reach some sort of agreement throughout 2008 without resorting to appraisal or court intervention.  It would make little sense to require American Family to demand appraisal and forgo the parties' efforts to reach accord on their own on the premise that a purported--and wholly extracontractual--one-year clock had started to tick on the day of the loss event.  Any such notion would unnecessarily cramp the parties' ability to negotiate on their own and would run counter to the terms of the parties' agreement.

demand and such demand is made only after the insured has brought suit, the court can then proceed to determine the loss amount rather than holding off so that the appraisal procedure can do that. Hayes did not announce a federal standard binding on this Court--it was based instead on inferences from then-existing Indiana caselaw that had concededly not construed comparable insurance policies but had rather followed a contra proferentem approach (see J. Posner's dissent, id. at 1341). But Monroe Guaranty Ins. Co. v. Backstage, Inc., 537 N.E.2d 528 (Ind. App. Ct. 1989) has since squarely held that when a demand for appraisal has been made after a lawsuit has been filed, the proper inquiry is whether the demand was unreasonably delayed. Hayes is thus an exceedingly weak reed--or no reed at all--on which Lyon can lean to support her second argument.

Nor does Lyon fare any better with her somewhat similar argument that American Family's opportunity to invoke the Appraisal Clause expired once Lyon filed suit, relying for that contention on Lynch v. Am. Family Mut. Ins. Co., 473 N.W.3d 515, 517 (Wis. Ct. App. 1991). For one thing, many other cases permit appraisal demands after suit has been filed under circumstances similar to those presented here (see, e.g., Terra Indus. Inc. v. Commonwealth Ins. Co. of Am., 981 F.Supp. 581, 599 (N.D. Iowa 1997)). Moreover, Lynch itself dealt with the very different situation of an insured that had but did not avail itself of an

ample opportunity, after impasse had been reached and before suit was filed, to demand appraisal--there the insurer had actually sent a letter expressly stating that the parties had failed to reach an agreement regarding the loss amount.

As already stated here more than once, in this case Lyon's counsel had given no indication to American Family that negotiations had broken down and impasse had been reached until counsel actually filed suit. And once again, American Family had never indicated to Lyon that attempts at negotiation were being abandoned. Because the Appraisal Clause specifically permits an appraisal demand only after the parties have failed to reach an agreement, and because American Family was understandably under the impression that negotiations were ongoing, it had no proper basis for demanding appraisal until after suit had been filed.

Hence, although Lyon also champions the two alternative standards just discussed, this Court joins others that have held that the appropriate standard is the third one that she proposes: whether an appraisal demand is made within a reasonable time after the parties reach impasse. On that score it would be hard to improve upon the comprehensive and thoughtful analysis by District Judge Mark Bennett in <u>Terra</u>, 981 F.Supp. at 600-01. After considering the cases discussed here[9] among others, <u>Terra</u>,

---

[9] That consideration included cases sought to be relied on by Lyon, such as <u>Meineke</u> and <u>Hayes</u>.

12

id. at 602 (citations omitted) summarized:

> In deciding whether a demand for appraisal was made within a reasonable time, and consequently has not been waived even if suit was filed before the demand was made, courts have considered the timeliness of the demand in light of the circumstances that existed at the time the demand was made. Pertinent circumstances include (1) the time between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand; and (2) whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal.

As for the first of those two enumerated factors, it has already been explained why the passage of time between the breakdown of good faith negotiations and the appraisal demand was quite minimal, for the breakdown became evident to American Family only when it learned it had been hit with this lawsuit-- even though that took place many months after the loss. To be sure, Lyon tries to put a different face on matters, first contending that the critical date should have been as early as April 2008, when she submitted her estimate. But that mistakenly focuses on the mere knowledge of a dispute, rather than the appropriate inquiry as to when the parties reached impasse in their efforts to resolve that dispute.

Perhaps recognizing that the April 2008 date is unrealistic, Lyon later asserts that good faith negotiations actually broke down on July 11 when Lyon wrote Drink to say the payment American Family had made to her was inadequate and that she would be hiring counsel to resolve the dispute. Again that confirms only

13

the existence of a dispute, while Lyon's hiring of counsel was expressed as a means toward the end of resolving that dispute. As already explained, American Family's efforts thereafter to confer with Lyon's counsel met with repeated responses that counsel needed more time for an adequate review of the case file, with a final promise that a response would be forthcoming by the end of 2008. To sum up once more, this Court agrees with American Family that Lyon's fulfillment of that promise by bringing this action marked the operative event--the confirmation that good faith negotiations had indeed broken down.

That being so, the elapsed time between American Family's first knowledge of this action through service of process and its appraisal demand cannot be characterized as unreasonable under either side's view of when the former event took place. And that is so whether the demand is ascribed to American Family's March 3, 2009 letter, as Lyon's Mem. 3 really acknowledges, or a less supportable March 27, 2009 date (when American Family actually brought the formal motion now under consideration).

As for whether a stay pending appraisal would prejudice Lyon, that might perhaps be said of an insured who had been compelled (1) to bring suit--incurring added legal expense--because an insurer had refused to continue good faith negotiations, and then later (2) to defend against a motion such as this one to compel appraisal. But that cannot be said of the

14

very different sequence of events that has been revealed here.
If Lyon has been wounded by bringing suit and then responding to
the Policy-permitted demand under the Appraisal Clause, that
wound must be regarded as self-inflicted--not as the suffering of
prejudice on Lyon's part.

Finally, Lyon also claims prejudice because appraisers would
now be unable to see the property at issue as it existed at the
time of the loss. But Lyon has not explained why that matters.
She has not, for example, argued that the property has somehow
changed post-loss.[10] Moreover, as already held, it was Lyon's
actions and not American Family's that caused any arguably
unnecessary delay.

## Conclusion

Under the circumstances of this case, American Family's
appraisal demand was not unreasonably delayed. Accordingly this
Court orders the parties to adhere forthwith to the appraisal
procedure outlined in the Policy. Meanwhile this action is

---

[10] In Bard's Apparel Mfg. Inc. v. Bituminous Fire & Marine Ins. Co., 849 F.2d 245 (6th Cir. 1988), which Lyon cites to support her argument of prejudice, the court relied in part on the fact that the damaged property had been disposed of between the filing of the claim and the demand for appraisal (id. at 249). Under that circumstance as well as others, the court held that the delay in demanding appraisal had been unreasonable. But Lyon has not explained why appraisal now would have to be conducted any differently in this case than if it had taken place shortly after the loss. Hence Bard's has not been shown to be of precedential value here.

15

stayed in accordance with 9 U.S.C. §3.

                                    _____
                                    Milton I. Shadur
                                    Senior United States District Judge

Date:  May 27, 2009