IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LYON,                         )
                                    )
              Plaintiff,            )
                                    )
    v.                              )    No.  08 C 7319
                                    )
AMERICAN FAMILY MUTUAL              )
INSURANCE COMPANY,                  )
                                    )
              Defendant.            )

MEMORANDUM OPINION AND ORDER

After this Court's issuance of its lengthy May 27, 2009
memorandum opinion and order ("Opinion"),[1] counsel for plaintiff
Lyon filed a Motion To Reconsider.  That submission posed
sufficiently serious concerns to cause this Court, at the
Motion's June 26 presentment date, to order an evidentiary
hearing.  That hearing was held on July 21, and this memorandum
opinion and order is issued to memorialize this Court's ruling as
announced orally, and in less formal form, at the conclusion of
the hearing.[2]

This Court has reviewed with care the testimony of the two
witnesses--Jenner & Block associate Jodi Newman ("Newman") and
American Family's insurance adjuster Drink--and it has

---

[1]  Because this opinion springboards from (and necessarily
assumes familiarity with) the Opinion, it will continue to employ
the same defined terms without having to repeat the definitions.

[2]  Those oral views were of course expressed extempora-
neously and were necessarily somewhat discursive.  Hence this
opinion reflects the definitive ruling on the subject of the
hearing.

reevaluated the parties' documentary exhibits in conjunction with that testimony. Based on that review and reevaluation, this Court has concluded that the operative date from which the "reasonable time"--the period within which American Family had to invoke the Appraisal Clause of the Policy--should be measured not from when American Family "learned it had been hit with this lawsuit" (Opinion at 13), but rather from October 20, 2008 or within a day or two thereafter.

Lyon Ex. 7 (also American Family Ex. 13) was an October 20 email from Newman[3] to Drink that read:

> I am writing to advise you that, at our direction, Mrs. Lyon has or intends to deposit the check sent to her by American Family. Please be further advised that such action is without prejudice to Mrs. Lyon's rights under the pertinent policies and law. Mrs. Lyon intends to pursue such rights to the fullest so as to receive both the policy benefits being wrongfully and deliberately denied by American Family for its own gain and to recoup the cost she has and will incur in redressing American Family's intentional misconduct.
>
> Sincerely,
> Jodi Newman

Its first two sentences were obviously calculated to avoid any risk of forfeiture of Lyon's legal position by reason of her

---

[3] Newman's testimonial explanation, both understandable and wholly credible based on the content and tone of that email, is that the email was actually drafted by Jenner & Block partner Ross Bricker ("Bricker"), who had the primary responsibility for the matter and was shown in the email as having received a copy. Newman was shown as the sender because she and Drink were the ones who had been engaging in email exchanges up to that point, with Bricker not having been in direct communication with Drink.

cashing the American Family check for something over $250,000, so far removed from the amount of Lyon's claim (her contractor had come up with a figure more than ten times that amount). But the critical third sentence was clearly confrontational, unequivocally putting American Family on notice that Lyon was ready to do battle in the legal arena.

Drink testified--again understandably, for as the adjuster he was not authorized to take up the cudgels of battle on American Family's behalf--that he sent that email on to American Family's Richard Oprenchak ("Oprenchak"). If American Family had any intention to negotiate any further in an effort to bring the parties together, a prompt response seeking to defuse the situation and suggesting (or even urging) such further discussion would have been the natural step to take. But American Family <u>never</u> responded at all (either directly through Oprenchak or through Drink on its behalf) to the October 20 throwing down of the gauntlet. With silence having descended after the October 20 email, Lyon and her counsel had every reason to believe (as would any objective observer) that the parties had reached stalemate-- and in this Court's view, American Family cannot contend in objective good faith that such was not the case at that time.

Moreover, this Court cannot credit Drink's response to an Oprenchak email some three weeks later as an account of any exchange with Newman on or about that November 11 date. It is

important to understand that Newman was a fledgling lawyer (admitted to the bar just a year earlier), working in her first job as a law firm associate--and as the earlier-referred-to October 20 email reflected, she understandably left any important substantive communications to the partner in charge.  It does not ring true that she would, on her own, communicate the firm's asserted lack of attention to an outsider after the strong statement that had been transmitted in the October 20 email.

This Court is reluctant to ascribe an outright fabrication (as contrasted with a faulty recollection) to Drink.  What appears to be a more palatable explanation, sparing Drink that taint, is provided by a look at the sequence of the Drink-Oprenchak emails.  On October 1 Drink had responded to Oprenchak's question "Any update on this file?" with this email (American Family Ex. 12):

> I contacted the insured's attorney (Jodi Newman) to get an update/status on the ACV repairs to property.  Jodi was not aware of any repairs completed at this time.
>
> She explained that they were still weighing their options and should make a decision in the next couple of months on how they will proceed.  I will follow-up with her in the next 45 days.

Then toward the end of the 45-day period mentioned by Drink, Oprenchak sent him this email (American Family Ex. 14):

> Hi Luster,
>
> Do you have an update on this file.  Contents claim in?

And here was Drink's response (id.):

> I contacted the insured's attorney Jodi Newman for a status on this claim.
>
> Jodi explained that they have not spent much time with the claim at this time; however, they expect to respond sometime before the end of this year.
>
> No updates to report at this [sic].

Newman testified that she reflected everything substantive that she did in her contemporary notes made during each workday, followed by her typing up that information and passing it on to her secretary for entry in her time records. And, as already stated, Newman reported everything substantive to responsible partner Bricker. And though her time records for October 1, 2008 included "telephone conversation with Luster Drink" (jibing with Drink's October 1 email, the earlier-quoted American Family Ex. 12), she shows <u>nothing</u> for November 11.

What appears most likely, and what this Court finds as a factual matter, is that Drink's November 11 email reference to the law firm's "not [having] spent much time with the claim," followed by his statement that "they expect a response sometime before the end of this year," had to represent a restatement of the October 1 Newman-Drink conversation reported in American Family Ex. 12, made without his having any <u>current</u> contact with Newman. Indeed, Drink's concluding his November 11 email with the statement of "No updates to report at this" would be a really bizarre closing if Drink had really made a <u>current</u> report in that email immediately preceding that statement (note that on

5

October 1 his response to Oprenchak's "Any update on this file?"
was a current report that contained no such concluding--and
inconsistent-- statement).

As the Opinion reflects, the spin that American Family had
put on Drink's November 11 email to Oprenchak was the linchpin of
this Court's deferral of the date from which a "reasonable time"
for invocation of the Appraisal Clause was to be measured (see
Opinion at 9 and 12-14).  In light of the findings reflected
here, the Opinion's reliance on that date was mistaken--instead
the kickoff date for looking at the "reasonable time" issue was
October 20, 2008 (or perhaps a couple of days after that, when
Drink had sent that email on to Oprenchak).

Under those circumstances, American Family's delay from that
October date until March 2009--after it had already been
sued--flunks the "reasonable time" standard that controls the
determination of when American Family had to call upon the
Appraisal Clause or lose the right to do so.  And that failure
results in the forfeiture of American Family's right to pursue
that route, rather than having the parties' rights decided in
this litigation.

Hence this Court vacates the previously-entered stay of this
action (for 9 U.S.C. §3 is not applicable), and the parties'
dispute will be resolved in this forum.  At the 9 a.m. August 27,
2009 status hearing date that this Court scheduled at the end of

the July 21 evidentiary hearing, the parties will be expected to

report on the then status of discovery and on an anticipated

timetable for dealing with the case.[4]

                _____
                Milton I. Shadur
                Senior United States District Judge

Date:  July 22, 2009

---

[4]  In the course of revisiting the Opinion for purposes of issuing this opinion, this Court noted a typographical error at three places in the Opinion, caused by the late insertion in the penultimate draft of a non-substantive n.2.  That late insertion made the references to "n.2" in the Opinion's n.5 and at pages 9 and 10 erroneous--in each instance the Opinion should have read "n.3" instead.  Accordingly the Opinion is ordered to be corrected in that respect, and the correction will be passed on to West Publishing, LEXIS and Westlaw.